The next case for today is 2021-30694, Davis v. Parish of Caddo. Good morning, your honors. Nelson Cameron on behalf of on behalf of the plaintiffs, Mr. Davis and Ms. Rebecca Davis The Parish of Caddo appointed James Gavin to be a board member and he eventually was also the chairman of the board. And he sexually harassed Rebecca Davis for a period of three years and then retaliated against her when she opposed that harassment. Caddo Parish appointed James Gavin to the board and served as chairman. He exercised that authority that was given to him by hiring Rebecca Davis and then setting her pay, setting her vacation, setting her sick pay, and her job duties. He leveraged these acts to groom her for sexual advances. Gavin's parish-appointed position facilitated his sexual harassment by permitting him access to areas that were not open to the general public. And from those areas, he would stare her down, ogle her, look her up and down, make sexually suggestive comments, require her to attend personal and official errands, suggest that she go to a motel with him, suggest that she should go on district-funded trips. It also provided him with the power and opportunity to retaliate against her once she opposed the sexual harassment. What is your best case that, as a Sewerage Board member, Gavin was an agent of the parish with respect to parish employment matters? The parish was the only authority that could remediate the hostile work environment. It was the only authority that could remove James Gavin. And it could do so any time it wished, for any reason it wished. But despite years of complaints to the parish about James Gavin, the parish did nothing until almost three years later, on May 14, 2018, it removed James Gavin. Because there was no way that with the tiny Sewerage Board that the other person could say, you're out, Gavin, as the chair, or something. They had no power over him. That's right. The board exercised no power and had no authority to do anything about Mr. Gavin's harassment. And they didn't have their own employment policies, etc., in the Sewerage Board? There was no—I'm sorry. Did they have employment policies in the Sewerage Board? Did they have a policy— They did. There was a— There was something of a personnel handbook. It didn't address sexual harassment. Was it adopted by the board? I'm sorry? Was it adopted by the board? There was a policy adopted by the board, but it was fairly meager. It set holidays. It set some hours. But Mr. Gavin told Ms. Davis, ignore all that. I'm the one who has the authority to set your hours, your pay, and those type of things. Did the policy list in it who you would go to to complain if you're being mistreated, like a normal employment policy would say that you go to the HR or the supervisor or some combination thereof? No, the board had no such policy. So Mr. Gavin exercised his authority, granted him other powers to retaliate by—even without the district board's authority, he put security cameras in the office, one pointed directly over Ms. Davis on her desk, and he also referred her for criminal charges for alleged payroll fraud, for which there was no grounds to believe that that had occurred. And then he referred her to the Louisiana Board of Ethics for a pay issue that he said she was taking money that wasn't belonging to her when he, in fact, was the one that gave it to her. Do you ask us to adopt the test suggested in the United States' amicus brief that the Eleventh Circuit used in the Lies case?  Are you advocating for some other test, or is that the test, how you would wish us to articulate it? The right to control test, I think it is the main test, that the parish had the right to control not only the board, because it created and could abolish and had general powers over the board, it had that right to control whether it exercised that right is another matter. So the 1974 Louisiana Constitution, Section 15, Article 6, and the Home Rule Charter of the parish, Section 8-08, says that the parish creates the board, the parish can abolish the board, and the parish has general powers over the board. And the parish even says in its financial report that it can impose its will on the board through significant influences on programs and projects and levels of service. So that's how you would say that regarding control. Let's turn to your Monell claim. What is the source of Gavin's authority to make policy for the parish and not just for the sewage district? In order for a Monell claim to survive, you would have to show that Gavin could make policy for the parish. Well, okay, so when the parish appointed Gavin to the board, it gave it the authority to operate on the board, and that would include establishing terms and conditions of employment. And see, when Gavin was first appointed, he was the only member on the board. There was a period of time when he was not only the chairman, he was the board for probably several months, and then there was a new vice chairman was appointed as well. But when he was appointed by the parish, he was the only person there. He was the chairman. He had the authority from the parish to establish policy for terms and conditions of Ms. Davis. When Ms. Davis was hired, he was the board. Gavin was. And he's the one who established the rate of pay. He's the one who established her job duties and so forth. Such as under Bennett v. Pippin, where you had the sheriff who was in charge of all law enforcement activities, and he raped the murder suspect. He was, of course, he was the chief policymaker for that particular area, and his acts made the county liable. And the same applies here with Gavin. He was the board. Okay. What is the status of the remaining state law claims, battery, sexual assault, that the district court said it wasn't going to address? All right. Judge Walter dismissed all the state law claims against the parish. I have pointed out in my brief the places where we mentioned that the plaintiffs were seeking claims against the parish for state law violations. And there's also, we seek, we allege we sought damages in Salido with the parish and the board. Judge Walter dismissed the claims to Sponte without any notice to the plaintiffs or an opportunity. So there aren't remaining state law claims? Yes. Because they've all been dismissed? Yes. They've been dismissed without prejudice? They were dismissed with prejudice, as far as I know. Okay. As far as I know. What are you asking us to do vis-a-vis that, if anything? I'm sorry? What are you asking us to do with state law claims? Remand them to the state court for adjudication and or provide the plaintiffs with an opportunity to amend to make it more explicit. It is explicit and implied in the complaint that those state law claims are there. But a remand to the district court to adjudicate and or provide an opportunity to amend. Is that just battery and sexual assault because you dismissed IED in malicious prosecution? Correct. Okay. Anything else? Established, I believe, that James Gavin himself was an agent of the parish. He was appointed by the parish to do this work. He could be removed at any time. He was a creation of the parish, and he served at the will of the parish, not at the will of the board. Thank you, Your Honor. Thank you. I think the Department of Justice. I'm sorry. I was. May it please the court, Natasha Babazade for the United States. Judge Elrod, I'd like to address your question about the Eleventh Circuit's framework for applying a single employer test. We're actually of the position that the single employer test that this court applies to private entities does apply to government entities. And this court's precedent doesn't preclude application of that test. The district court here relied on Trevino, but Trevino is a case involving public entities. And so its footnote distinguishing this court's decision in Dumas is dicta, but it also mischaracterized this court's decision in Dumas. Dumas, in a footnote, declined to apply the single employer test to the state and the county, both of which were not parties to the suit. So it may have done so because those entities could not adequately represent their interests. But in addition to that, Your Honor, Dumas never expressed a categorical rule that the single employer test does not apply. Trevino was dicta. And the other court decision, Turner, which the only other published opinion in the circuit, did apply the single employer test to the government entity in that case. So we would maintain that the single employer test does apply to government entities. To be clear, Your Honor, this court should clarify that more than one government entity can be a particular worker's employer under Title VII. Lower courts in this circuit have reached conflicting answers on this issue. As this court has recognized, whether an entity is an employer requires an evaluation of the totality of the employment relationship between the parties. That analysis is fact intensive and can be controlled by various tests, including the joint employer test, the single employer test, which I just discussed, and the agency test. The district court here erred by refusing to apply any of these tests and holding as a matter of law that more than one government entity can never qualify as an employer under Title VII. That holding is inconsistent with Title VII's text, this court's precedent, and the decisions of other courts of appeals that have considered this issue. And I'd like to take a moment to discuss Title VII's text. Congress enacted Title VII to root out discrimination in the workforce, and it treated private and public employers alike. If you look specifically at Title VII's text and the definition of employer and a person that is included as an employer, it explicitly states and includes one or more before listing government entities alongside private entities. The definition of employer also includes agents of the employer. This court's precedent is clear that employer is construed liberally, and this court must engage in a factual analysis of the totality of the employment relationship before determining whether any given entity is an employer. What do you say to the lies, likes, opinion, concept that a starting premise for this is that the creation of the Sewage Board here, or the creation of some subordinate agency, needs to have been done for the purposes of evading this sort of supervision, evading responsibility by the higher-level authority? Your Honor, there – I'm – are you addressing – Well, let me quote it to you. If it is established that a state's purpose in creating a nominally separate entity was to evade the reach of discrimination laws, then we can break through this division. And that seems to me to be a prerequisite, at least under the likes standard, for making the parish here responsible. So I'm asking you to respond to that part of what the likes opinion says. I disagree, Your Honor. None of these tests have an intent requirement. And though there are concerns – Respond to likes. Yes. Though there are concerns that an entity may evade the discrimination – federal discrimination laws, there is no intent requirement under Title VII or in any of these tests. And Title VII treats private and public employers alike. And so these tests were created to look specifically at the employment relationship, not necessarily the underlying intent. I understand what you're saying. You're saying likes may well have required it, but it's wrong to require it. We don't endorse the test in likes, Elias, Your Honor. I think it's part of the test. I thought you did endorse the test in likes. No, we pointed to likes as advancing an alternative framework. This court here and the district court here outright rejected application of the single employer test. And in doing so, it failed to analyze specifically the parish. And this court hasn't advanced any other framework. And so we maintain that this court must look to the totality of the employment relationship. We just point to likes as an example of a court that didn't outright refuse application of the test without advancing some other framework. So likes says, absent evasive purpose, the presumption against aggregating separate public entities will control the inquiry unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely intertwined with respect to control the fundamental aspects of the employment relationship that they should be counted together under Title VII. So what is your disagreement with that? It places a very high burden on plaintiffs, especially when there's no basis for which government and private entities should be treated separately here. We understand, looking at the likes test, we understand that perhaps the fourth factor is readily and commonly applicable to government entities because they share similar sources of funding. But just because there's some awkward tension between the single employer test doesn't necessarily mean that this court shouldn't apply that test. And so I'll just add that there shouldn't be a burden on courts to advance an alternative framework when courts have been applying the single employer test for several decades now. Your time is up. Oh, thank you, Your Honor. Thank you. Your Honors, Henry Bernstein on behalf of the parish of Caddo. And before I get into my brief, I do want to comment on one factual issue. I believe the record would reflect that the first complaint of sexual harassment to a member of the parish commission was made in January of 2018. Record pages 403, 408-9, and 444. Also pages 399-400 and 397-98. It was three parish commissioners that were contacted by Rebecca Davis in early 2018. May 2018, the parish commission removes James Gavin from the Board of the Sewage District. It was not a matter of years. There are three issues in this appeal. First, can the... Are you correcting just how long Gavin was there? Is that what you're... Gavin was appointed in 2015, I believe. I'm just wondering, what are you saying needed to be corrected? Well, I believe the representation was that there were complaints to the parish about Mr. Gavin for years. And instead, I wanted to point out that it was a matter of months on getting the complaints that was addressed in a matter of months. So he may have done this behavior for years. Correct. But they didn't know about it until January of 2018. Yes, ma'am. Yes, Your Honor. Okay. There are three issues in the appeal to me. First, can the parish be considered the employer under the joint employer single integrated enterprise test? Second, was the parish the direct employer? Was there an employer-employee relationship with Rebecca Davis? And if it's not the employer, can the parish be held liable under any theory other than policy, practice, or custom, i.e., 1983 and Monell? The significant issue in this case, both for the parties and in a larger sense, is whether the joint employer single integrated enterprise rule should be applied to government entities. The origin of that rule was under the National Labor Relations Act because that act had an exception for employers with fewer than 15 employees. And the National Labor Relations Board formulated this rule to address situations where private employers were getting around the National Labor Relations Act by maintaining entities with fewer than 15 employees. And it's clear that employers, that private employers in that particular field, had an incentive to avoid the coverage of the act. Likewise, Title VII was adopted with an exception for employers with fewer than 15 employees. In the face of private businesses structuring themselves to avoid coverage under Title VII, the EEOC and courts implemented the same approach, i.e., the joint employer single integrated enterprise, to address situations where coverage under Title VII was avoided. Why doesn't the public employer have the same incentive where they're the ones who do the budget and give all the money? So you couldn't get recover against the sewage district or whatever, sewage board. Correct. Without, and they're the only ones who hire and fire the person. I mean, they are controlling the board. They are. I agree with that. They're controlling the board. The sewage district board controls its employees. No, but the parish controls the board because it hires and fires the board chair. There's no independent committee members or shareholders, etc. It's the parish that hires and fires. By state law, the parish governing authority appoints the members of the district board. Right. So that would be all the board. And they have the power to appoint. They have the power to remove. And the third power is that if the district seeks to go out for a tax millage by means of election, it has to be approved by the parish. That's the only three powers that the parish has. The budget, too. They give the money, don't they? No, ma'am, they don't. They don't control. I thought their annual report says they control some financial. Your Honor, they do not. The budget for the sewer district, for any of the districts, is not subject to approval by the parish. The parish financial statements include the districts as component units. It is a... But they're in charge. They have the money. And they can withhold the money, can't they? No, Your Honor, they can't. They cannot withhold money? There are no appropriations from the parish government to the districts. Okay. The districts raise money either by means of fees that they collect, in this case for sewer charges, or by taxes. So if the district got a judgment against it, nobody would have to authorize the payment? Who would authorize the payment of that judgment? It would be the sewer district board. The sewer district board. They would be able to... Are you saying... I'm sorry, Your Honor? Can I ask a question? Are you saying that all of these entities do consolidated financial statements? There's a quirk, and it's a bit frustrating. From an accounting standpoint, because the parish governing authority has the power to control whether the sewer district goes out for an election to get a tax millage, under the accounting rules, that's considered enough control that the parish has to include the districts, and that's true with regard to the sewer district, fire districts, hospital districts, all of those districts, have to be included in the financial statement. Now, all that means is that the financial audit for those districts is furnished to the parish. That's the extent... Well, that also means that any liabilities here, if there are any, are consolidated with the parish, right? No, ma'am. No, Your Honor, they're not. Well, they are for financial statement purposes. You say that's one financial statement that covers the whole collection of entities here. That's what you're telling me? What I'm saying, Your Honor, is that under the accounting rules, not any legal issues, but under accounting rules, because the parish appoints members to the board and because if that board sought to go out for a tax millage, that it would have to be approved by the governing authority, that is considered enough control under accounting rules that the parish has to include the districts as component units in its financial statement. So that means that, in effect, liabilities, if there is liability in this case, that would appear on the financial statements of the whole group. It would be consolidated. I can't... What you're saying, if that's true, you're saying that whoever the auditors are, let's say Price Waterhouse, they say, okay, this is one entity for purposes of the liabilities of the sewer group and all the other groups, we consider them liabilities of the parent organization. That's what you're saying. Under the accounting rules, they're considered as component units. Yes, Your Honor. So under Title VII, because there was this exception for employers with fewer than 15 employees, the same rule was adopted and applied by the EEOC and then later courts. By way of comparison, what I want to point out is that in the private sector, setting up separate entities to avoid coverage under the Title VII is a fairly simple matter. From that standpoint, a business owner or an executive simply can pick up the phone and say, I'm getting ready to enter into a contract for the maintenance of this refinery or the janitorial services on this building, calls his counsel or his general counsel office and says, I need to set up another entity with fewer than 15 employees. Do the paperwork, sign the paperwork, file it with the Secretary of State, and it's done. On the other hand, in the public sector, setting up a separate entity is a much more complicated process, and it is a process that is open and scrutinized at many levels. Creation of government entities takes place in the public arena by means of overt public acts in public settings, using means and structures that are provided by state law. And in this particular case, and I'd also point out that those public entities are also subject to good government laws, public contracting, open meetings, public records or FOIA. There is a degree of scrutiny of public entities that there is not for private. And that can be seen in the creation of this case here. In July of 1958, the at that time parish police jury received a petition from 90 property owners seeking the creation of this sewer district. They, by resolution, called a public hearing in September of 1958, at which time they adopted an ordinance creating this sewer district. And, Your Honor, I would address part of your comment with regard to lies and the issue of whether or not the entity was created to avoid the federal employment discrimination laws, would point out that the sewer district was created in 1958, which predates the adoption of Title VII. So it would be chronologically impossible to say that the sewer district was created to avoid the application of federal employment discrimination law. I'll tell you, including different options, to do nothing or to look at some of these standards, it does seem to me the like standard about evading is particularly onerous and difficult to sort of satisfy the general concept of whether it's a common employer with some sort of control. I would imagine it would be very hard to prove. Most of the time, it probably wasn't done for purposes of evasion. But the effect is that you are limiting the liabilities so low in local government that there basically is no liability. So I'm just not sure likes is a good standard. Now, there is another point that lies, that the Eleventh Circuit makes and lies, and I think is applicable here once again, and that is that the nature and relationship of bodies, such as the parish and the sewer district, is uniquely an exercise of state sovereignty. That is, it's the state legislature that sets this framework for us. Also, in the lies case, there is a declaration that there is a presumption of separate and distinct public entities for purposes of Title VII. The court noted there that the presumption may be rebutted by establishing, as we just discussed, that the entity was established to evade federal employment law and that the presumption will control unless it is clearly outweighed by control of the fundamental aspects of the employment relationship such that they should be counted together under Title VII. Under that rationale, the parish would not be the joint employer or single integrated enterprise. The establishment, as I pointed out, predates the enactment of Title VII, and the facts themselves can only lead to the conclusion that the parish did not have control of the fundamental aspects of the employment relationship between Rebecca Davis and the sewer district number two. What about the hybrid economic realities common law control test that we use in other contexts? Well, you know, I think the facts, though, don't reach that because the facts basically, and this is primarily from the record pages 373 to 393, which is the deposition of Ms. Davis herself. The decision to hire her was made by James Gavin at the time when he was the only member of the board. He set her rate of pay. He set her work schedule. He set her vacation and sick pay and her job duties. Further, the employment paperwork that she did was done at the sewer district office, not at the parish human relations office, and her place of work was the sewer district office, and her supervisor was initially James Gavin and then later the board. So who did she have to go to? I mean, so you're saying it's a one-man shop basically, and so if she is being mistreated or she's not getting the normal things that you would have in a public entity, what is she supposed to do? I would first observe I think that's probably true in any employer with under 15 employees to begin with, and secondly, she did have a route that she eventually exercised, and that was going to the parish commissioner for that particular area of the parish and complaining to him, but she did that in January and February of 2018. Additionally. Are you relying upon forfeiture as an argument in this case or waiver? Is that in the briefs? No, ma'am. You're not relying on forfeiture or waiver? No, Your Honor. Okay. Additionally, her timesheets say that she's working for the cattle sewer district number two, and her W-2s come from the sewer district. Additionally, the testimony of both from affidavit and also the 30B-6 of the parish, and this is found in the record at pages 286 through – I'll give specific sites as I go through. The parish doesn't consider the employees of the firewater and sewer districts as parish employees. That's record page 286. It's the McGee affidavit. The parish does not investigate allegations of sexual harassment involving employees of districts. Record page 298. That's the deposition, the 30B-6 deposition of the parish. Are all these other districts one to three employee districts? The water and sewer districts, yes, ma'am, primarily are because there's basically an office employee, an office manager that does the books, takes care, receives payments and writes checks. Then they're going to have several – basically, I think, in this case, the sewer district actually contracted for it, but some of the other districts have one, two, three employees that do maintenance, that go out and actually repair leaks and install meters and stuff like that. The fire districts themselves are larger because they now – most of the fire districts employ either full-time or part-time firemen, so some of them will be over the 15 threshold. And from Caddo Parish's standpoint, we have a hospital service district that operates a hospital, which obviously would have more than 15 employees. And I think as pointed out in the amicus filed by the Municipal Lawyers Association, there are any number of jurisdictions across the circuit that have this same structure where there are subsidiary or smaller or districts that are created by the governing authority to perform specific functions, and many of them are going to have fewer than 15 employees. Additionally, the parish does not provide technical support for the water, sewer and fire and hospital districts. That's record page 299 and 343. And the parish doesn't have responsibility to provide training or advice to the various districts, and that's record page 342. So the parish was not the final decision maker in connection with the employment matters in this litigation and therefore is not the employer of Rebecca Davis under either the joint employer or integrated enterprise test. Additionally, the parish is not Rebecca Davis's direct employer. This is important because a number of her arguments are premised on the parish being her direct employer. As noted earlier, the parish, the district, is a single independent legal entity with its own governing authority. Coincidentally, the Louisiana Supreme Court actually addressed the status of this specific district back in 1960, holding that the Board of Supervisors of the district was the governing authority of the district. Louisiana basically applies the four tests, four elements with regard to the employer-employee test, selection and engagement, payment of wages, power of dismissal and power of control. Under all four of those, based on the facts that I've recited just a moment ago, under all those, the district is the employer, not the parish. Do you argue that we have already bound ourselves? Do you believe we have bound ourselves? The government, the U.S. government says we have not bound ourselves. Do we, is this, in fact, you pointed, you started your argument by telling us that this is an interesting question of, you know, and if you thought we were bound, this case wouldn't really be such an interesting question, would it? No, ma'am. No, Your Honor, it's not. And really, there's the Trevino case, there's the Karagounis case, and then there's the Turner case. All the cases, I think the statement I found, and I cannot recall where, is that the Fifth Circuit has not adopted a rule that it will not consider the single, the joint employer, single integrated enterprise. There are the cases that I've cited in my brief. Basically, it's Trevino, Karagounis, and Turner that say that the test doesn't fit government entities or that it's not appropriate to use in the public sector. And so, from that standpoint, it's true. The Fifth Circuit, as a rule, hasn't said this is the rule in this circuit. Additionally, there is a circuit split. There are cases out of the Tenth Circuit and there are cases, I think, out of the Fourth Circuit that basically are saying that, particularly the Tenth Circuit case involving a sheriff, where they did find that the sheriff and the county government were at the same, basically, joint employer. Can you tell me what you believe or tell us what you believe is your best argument under the totality of the circumstances test, assuming we were going to do totality of the circumstances, that this case doesn't merit joint employer treatment in any fashion? There was that the concept is that when the parish appoints members of the governing board of the district, they go off and run the district as they see fit. There is zero involvement between Ms. Davis and the parish government. She is an employee of the sewer district and the sewer district only, and therefore extending to the parish any exposure for the acts of Mr. Gavin is inappropriate. And that manual is just from the water district, right, the manual she's given, the employment policies or whatever? That was. Now, I will, in full answer to the question. It came from the parish, didn't it? Well, in full answer to the question, what the record would reflect is that one of the other board members, because there was this question of having a policy, went to the parish and got a copy of the parish's policy and brought it to the board and said, let's adopt this. Because if you look at what was adopted by the board, it's clearly not tailored for the board. But it is just a copy of the parish's policy. They took theirs, stuck their name on it and said, this is our policy now. Yes, Your Honor. Even though it's not really a, if you had gone line by line, it wouldn't have been a right policy. That's correct, Your Honor. Okay. Does the court have any questions, further questions? No, I think, I don't think any of us do. Thank you. Thank you. I guess the very first thing I need to clear up is this idea about the complaints that Ms. Rebecca Davis made to Parish Commissioner Johnson directly before January 2018. If you look at Record on Appeal 3394 paragraph 7, it details when Ms. Davis went directly to Parish Commissioner Johnson about this harassment. And also, Vice Chairman Haley went to Commissioner Johnson on Ms. Davis' behalf before January 2018. In fact, kind of early on into the harassment. This thing that happened in January 2018 was something that the board's attorney asked Ms. Davis to do, to make a written complaint. And then that written complaint was made. And four months later, she was discharged on May 31, 2018, about when this personnel policy was, just shortly after the personnel policy was adopted. And they're doing the personnel policy now. When did they get the second board member? Yes. When specifically? Oh, did the second board member come in? It was, okay, so I believe, if I'm correct, Gavin was appointed in September 2015. The second board member was appointed, I believe, in December of the same year, 2015. And I'm sorry, so when is the first time that you believe some complaint was made to the parish? We believe that sometime in 2015, I mean, I'm sorry, in 2016, that's when we believe the first complaint was made. So, I mean, it was a while since the question was asked when the event happened. So, to the best of her knowledge, it was sometime in 2016. I believe the parish is missing the point. This argument that we're making that the parish is liable is based upon this concept of being an agent. Of course, an employer is prohibited from discriminating against an individual, not necessarily an employee, but an individual. And an employer is a person who employs more than 15 or more employees, engaged in interstate commerce, and any agent. So, we're looking at agent. We're not looking at is this a joint employer or a single employer doctrine case. We're looking at this is an agency case, strictly under the plain language of Title VII. And what makes the parish an agent, I mean, a principal and Mr. Gavin or the board an agent, is that the parish agreed to appoint these persons to go to the board to operate the district. They accepted that. Then they operated the district in such a poor manner that the parish should be liable. The parish had sole control over the terms and conditions. They're the only ones who could correct any kind of wrongdoing. The board could not correct any wrongdoing or any discrimination that was being performed by a board member. You look at Owens v. Rush, which is a case where a sheriff who was elected from the same county and the county board elected from the same county, they were agents of the county. Here, the board itself, its source of political authority goes back to those voters of the parish, the same as in Owens v. Rush. Owens v. Rush examined the congressional record and found that governmental subdivisions were brought within the reach of Title VII so that all state and local government employees would have access to remedies available under the Act. This would be liberally construed. There's an Eleventh Circuit case I did not cite in my brief, Ruggiero v. Nunez. That court implied that if you have a relationship like this, a political subdivision of the county or the parish, those are agents and they are agents of that employer. Now, in that case, the Eleventh Circuit didn't find in favor of the plan because the plan did not name the county. But in the concurrence, it stated that there should be some form of control by the principal over the agent. And here we have absolute control. We have absolute power to control the terms and conditions. We have absolute power to remove that man from his office. Counsel, you said halfway through your rebuttal that this is an agent case. Yes. It's an agent principle case, which are you indicating, therefore, that that is your argument and not so much these more involved theories of integrated enterprise and joint employer? Right. So that's what we should be looking at is the agency argument? I do believe, Your Honor. I'm looking at the text of Title VII as opposed to any principles that have been derived from the NLRB. I'm looking at it strictly there, that James Gavin, the board, are agents of the parish. Well, then that makes me have a question. You conceded part of your time to the government today who came in and argued that there's a single joint enterprise or single enterprise theory. I'm not ruling that out. Counsel, are you arguing those things or are you not arguing those things? Because that's what they responded to as well, because I was under the impression we were all dealing with whether or not some articulation of the joint enterprise, single enterprise type theory or control or something like that would apply. Sorry for the confusion. I'm looking at what I'm arguing here today is the plain text of Title VII for the agency. In my brief, I addressed joint employer and single employer theories. I believe this Court has not directly addressed whether those apply in this context. But as my oral argument, I'm looking at the agent. The agent is probably the more powerful argument, the more driving argument in the case. So do we need to address these other arguments or not address these other arguments? I can't tell. Well, in my oral argument, I'm only addressing the agent argument. Just in your oral argument, but in your brief you addressed the other. Yes, in my brief I addressed the other. You didn't address them much. Sir? Let me ask the same question this way. Are you asking us to rule on the agency issue? And if we do, that is the only issue we need to rule on? Yes. Even if you lose on it, you don't want us to address joint enterprise or single enterprise? Of course, I want to win for my client, and I'm addressing and looking at both arguments. The agent argument is what I addressed in the oral argument, and I have addressed the single or joint employer argument. They do intertwine very closely. I believe that the plain language of Title VII permits the court to find that the board and Gavin were agents of the parish and thereby make the parish liable. Okay. We'll do the best we can. Sir? Thank you. Okay. Thank you. As I said, some variation of these in two other cases today. Right towards the end, there was some case cited for the first time that was not in the brief. Therefore, you will have five days to provide. You need to provide a citation to that case and everything, and then the opposing counsel will have five days on that for a 28-J because we're not going to be having arguments about cases that people don't know about. Okay. Thank you.